FILED
CLERK
2:44 pm, Sep 27, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIC JACKSON, on behalf of himself and all others similarly situated,

                Plaintiff,

-against-

RUSHMORE SERVICE CENTER, LLC,

                Defendant.
------------------------------------------------------------X

**OPINION & ORDER**
**18-CV-4587 (SJF)(AYS)**

FEUERSTEIN, J.

On August 15, 2018, plaintiff Eric Jackson ("plaintiff") commenced this putative class action against defendant Rushmore Service Center, LLC ("defendant"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Pending before the Court is defendant's motion to compel arbitration and stay this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. For the reasons set forth below, defendant's motion is granted.

I.    BACKGROUND

    A.    Factual Background

Plaintiff alleges that defendant violated the FDCPA by sending him a purportedly misleading collection letter, related to a credit card account ending in -5838 (the "Account") that was issued by First Premiere Bank ("FPB"), on or about August 14, 2017. (*See* Complaint ["Compl.,"], ¶¶ 7-9 and Ex. A). At all relevant times, defendant was authorized and retained by FPB to collect on the Account after plaintiff defaulted in making the minimum payments due on the Account. (Amended Declaration of Julie K. Gilson in Support of Motion to Compel ["Gilson Decl."], ¶¶ 5, 9 and Ex. 2).

1

Plaintiff opened the Account on March 1, 2016 by completing an online application on FPB's website. (Gilson Decl., ¶ 6). Thereafter, pursuant to its normal course of business and regular business practices, FPB directed its vendor First Data Resources ("FDR") to mail the applicable credit card for the Account, together with the card agreement containing the terms and conditions governing the Account (the "Card Agreement"), to plaintiff via first class United States mail sent to the address plaintiff had provided to FPB. (*Id.*, ¶ 7). Plaintiff does not dispute that he received the credit card and, indeed, account statements reflecting plaintiff's use of the Account establish that he received the mailing containing both the credit card and the Card Agreement. (*Id.*, Ex. 2).

Defendant submits "an exemplar Credit Card Contract and Account Opening Disclosures," bearing the notation "02/16," which "contain[s] the terms and conditions governing the Account that would have been sent to [plaintiff] at the same time the credit card was sent to him." (Gilson Decl., ¶ 7). Among those terms and conditions is an arbitration provision, providing, in relevant part:

> "PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ALL DISPUTES ARISING OUT OF OR CONNECTED TO THIS CONTRACT SHALL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY AND/OR TO PARTICIPATE IN OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING, BUT NOT LIMITED TO, CLASS ACTIONS). EXCEPT AS OTHERWISE PROVIDED, ENTERING INTO THIS AGREEMENT CONSTITUTES A WAIVER OF YOUR RIGHT TO LITIGATE CLAIMS AND ALL OPPORTUNITY TO BE HEARD BY A JUDGE OR JURY.
>
> **<u>Parties and Matters Subject to Arbitration:</u>** For purposes of this Provision, 'you' and 'us' include the employees, parents, subsidiaries, affiliates, *beneficiaries, agents and assigns* of you and us. For purposes of this Provision, 'Claim' means *any claim, dispute or controversy* by either you or us, *arising out of or relating in any way to* this Contract, this Provision (including claims regarding the

applicability, enforceability or validity of this Provision), *your Credit Account*, any transaction on your Credit Account and our relationship. 'Claim' also refers to any interaction or communication between you and us that occurred prior to or concurrent with entering into this Contract, including those now in existence, regardless of present knowledge. 'Claim' shall refer to claims of every kind and nature, including, but not limited to, initial claims, counterclaims, cross-claims and third party [sic] claims. All Claims are subject to arbitration, regardless of legal theory and remedy sought, including, but not limited to, claims based in contract, tort (including negligence, intentional tort, fraud and fraud in the inducement), agency, *statutory law* (federal and state), administrative regulations or any other source of law (including equity).

**Agreement to Arbitrate**: *Any Claim arising out of or relating to* this Contract, or the breach of this Contract or *your Credit Account*, shall be resolved and settled exclusively and finally by binding arbitration, in accordance with this Provision. . . . However, only a court of law, not an arbitrator, shall determine the validity and effect of this Provision's prohibition of class arbitration. For any Claims covered by this Provision, a party who asserted a Claim in a lawsuit in court may elect arbitration with respect to any Claim subsequently asserted in that lawsuit by any other party.

**Voluntary Waiver of the Right to a Jury Trial and Class Action Participation**: As a result of this Provision, neither you nor we have the right to litigate any Claim in court or the right to a jury trial on any Claim, except as provided above. **YOU AGREE THAT YOU ARE VOLUNTARILY AND KNOWINGLY WAIVING ANY RIGHT YOU MAY HAVE TO GO TO COURT OR TO HAVE A JURY TRIAL. FURTHERMORE, NEITHER YOU NOR WE MAY SERVE AS A REPRESENTATIVE, A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY. SIMILARLY, NEITHER YOU NOR WE MAY PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN A LAWSUIT OF ANY CLAIM.**

**Prohibition of Class Arbitration**: All Claims shall be resolved by binding arbitration on an individual basis. Claims made and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, nonrepresentative) basis. Therefore, the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving individual Claims. **UNDER THIS ARBITRATION PROVISION THERE IS NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS BASIS**. Arbitration will only be conducted on an individual Claim basis and there is no right or authority to consolidate or join any of your Claims with any other Claims. **YOU AGREE THAT YOU ARE VOLUNTARILY AND KNOWINGLY WAIVING ANY RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION UNDER THIS PROVISION**.

> **Governing Law**: This agreement to arbitrate is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as it may be amended. If for any reason the Federal Arbitration Act does not apply, the substantive law of the State of South Dakota shall govern this Provision."

(Gilson Decl., Ex. 1) (italics added) (emphasis in original).

### B. Procedural History

On August 15, 2018, plaintiff commenced this putative class action against defendant alleging, *inter alia*, that the collection letter defendant sent to him on or about August 14, 2017 was false, deceptive or misleading in violation of the FDCPA. In lieu of filing an answer to the complaint, defendant moves to compel arbitration and stay this action pursuant to the FAA.

## II. DISCUSSION

### A. Motion to Compel

Section 2 of the FAA provides, in relevant part:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. That provision "reflect[s] both a liberal federal policy favoring arbitration, . . . and the fundamental principle that arbitration is a matter of contract[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (quotations and citations omitted). "The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 344, 131 S. Ct. 1740 (quotations, alteration and citation omitted).

4

Section 4 of the FAA provides, in relevant part:

> "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . ."

9 U.S.C. § 4; *see also Concepcion*, 563 U.S. at 344, 131 S. Ct. 1740 ("§ 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure ... to perform the same' is not at issue).")

Since "[t]he FAA directs courts to place arbitration agreements on equal footing with other contracts, but . . . does not require parties to arbitrate when they have not agreed to do so[,]" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) (quotations and citation omitted), courts "look first to whether the parties agreed to arbitrate a dispute." *Id.* at 294, 122 S. Ct. 754; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (holding that since the FAA "places arbitration agreements on the same footing as other contracts, . . . parties are not required to arbitrate unless they have agreed to do so. . . . Thus, before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." (quotations and citations omitted)). This question, *i.e.*, the "question of arbitrability," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), is determined by state contract law. *Meyer*, 868 F.3d at 73-74; *Nicosia*, 834 F.3d at 229.

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment[,] . . . requir[ing] a court to consider all relevant, admissible evidence submitted by the parties and . . . draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (quotations and citations omitted); *accord Meyer*, 868 F.3d at 74. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). However, the need for further court proceedings on the issue may be obviated when "the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law. . . ." *Id.* (quoting *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011)).

The only question at issue on this motion is whether a valid agreement to arbitrate exists between the parties. Plaintiff's sole argument in opposition to defendant's motion to compel is that defendant has not made a prima facie showing that the Card Agreement containing the arbitration provision at issue was mailed to him and, thus, there is no presumption that he ever received it.

1. Choice of Law

While defendant contends that South Dakota law applies to determine the question of arbitrability based upon the choice-of-law provision in the Card Agreement, plaintiff relies on New York state law in his opposition to the motion. Contrary to defendant's contention, the choice-of-law provision in the Card Agreement is not determinative because "[a]pplying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a

provision before its adoption by the parties has been established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).

"To determine which state's law to apply to the issue of contract formation, a federal court sitting with federal question jurisdiction looks to the choice-of-law doctrine of the forum state; here, New York." *Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158, 161 (E.D.N.Y. 2010); *see also Biggs v. Midland Credit Mgmt., Inc.*, No. 17-cv-340, 2018 WL 1225539, at * 6 n. 5 (E.D.N.Y. Mar. 9, 2018) ("Courts generally apply the choice-of-law rules of the forum state (here, New York), instead of federal common law, when determining the validity of a contract under state law in federal question cases."); *Royal & Sun Alliance Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-cv-3770, 2015 WL 5098119, at *4 (S.D.N.Y. Aug. 31, 2015) ("[B]ecause the issue of contract formation hinges upon state law, where parties call upon a federal court to determine the validity of a contract, case law from within this circuit suggests that courts should generally apply the choice-of-law rules of the state in which they are located-in this case, New York.")

"Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) ("A choice-of-law analysis need not be performed unless there is an 'actual conflict' between the applicable rules of two relevant jurisdictions." (quotations and citation omitted)); *Matter of Allstate Ins. Co. (Stolarz—N.J. Mfrs. Ins. Co.)*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (N.Y. 1993) ("The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.") Where, as here, there is no conflict between the applicable substantive law from each

jurisdiction, *see, e.g. McCormick v. Citibank, NA*, No. 15-cv-46-JTC, 2016 WL 107911, at * 4 (W.D.N.Y. Jan. 8, 2016) (finding no conflict between the substantive law of contracts as applied in both New York and South Dakota in a similar case), this Court may dispense with the choice of law analysis and is "free to apply" New York law. *Int'l Bus. Machs.*, 363 F.3d at 143; *see also Licci*, 672 F.3d at 157 ("If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law.")

        2.       Existence of Agreement to Arbitrate

"[T]he party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Biggs*, 2018 WL 1225539, at *8 (quotations and citation omitted); *see also Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. June 3, 2010) (summary order) ("[A] party seeking to invoke FAA § 4 must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.' . . . The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made."); *Ferro v. Allied Interstate, LLC*, No. 19-cv-49, 2019 WL 3021234, at * 2 (E.D.N.Y. July 10, 2019) ("The moving party has the initial burden of showing that an agreement to arbitrate exists." (quotations, alterations and citation omitted)).

Defendant sufficiently demonstrated that the Card Agreement was mailed to plaintiff, and that plaintiff received it. The amended declaration of Julie K. Gilson, an employee of Premier Bankcard, LLC, the servicing entity for FPB, (Gilson Decl., ¶ 1), who has "personal knowledge of the general business practices of [FPB] with respect to its credit card accounts . . . [and] access to the business records relating to the credit card accounts issued by [FPB]," (*id.*, ¶ 3),

establishes: (i) that FPB had a "regular business practice" of directing its vendor to send, via first class mail by way of the United States Postal Service, a copy of the credit card agreement containing the terms and conditions governing an FPB credit card account together with the credit card for that account, (*id.*, ¶ 7); and (ii) that, in accordance therewith, the Card Agreement containing the arbitration provision at issue would have been sent to the address plaintiff provided to FPB at the same time the credit card was sent to him. (*Id.*, ¶ 7 and Ex. 1). The address on the letter sent to plaintiff with the credit card and the Card Agreement matches the address on each of the statements sent to him, as well as the address on the collection letter at issue. (*See Id.*, Ex. 2 and Compl., Ex. A). Gilson's declaration is, thus, sufficient to establish that the Card Agreement was mailed to, and received by, plaintiff. *See, e.g. Brecher v. Midland Credit Mgmt.*, No. 18-cv-3142, 2019 WL 1171476, at *4 (E.D.N.Y. Mar. 13, 2019); *Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-cv-6137, 2017 WL 2414639, at * 2 (E.D.N.Y. June 2, 2017) ("[P]roof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business." (quotations and citation omitted)); *Biggs*, 2018 WL 1225539, at * 8 ("Proof of mailing may be established either by offering testimony of the person who actually mailed the letter or by showing that it was the regular office practice and procedure to mail such a letter.")

Moreover, "[u]nder both New York and South Dakota law, 'regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account[.]'" *Bakon*, 2017 WL 2414639, at *2 (quoting *McCormick*, 2016 WL 107911, at *4 (citing cases and statutes)). Thus, the uncontroverted evidence demonstrating: (i) that plaintiff opened a credit card account with FPB, used the credit card issued by FPB to incur a debt and then defaulted on the payments thereunder; and (ii) that it was FPB's regular business practice to

9

direct its vendor to mail a copy of the Card Agreement together with the credit card when an account was opened, and that it directed its vendor to do so with respect to plaintiff's Account, is sufficient to show that plaintiff received the Card Agreement and consented to its terms.[1] *See, e.g. Bakon*, 2017 WL 2414639, at * 2. Therefore, defendant has satisfied its burden of showing that a valid agreement to arbitrate exists between the parties.

The case, *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1328 (11th Cir. 2016), cited by plaintiff, is distinguishable because, *inter alia*, the defendant did not contend that the credit card agreement containing the arbitration clause at issue was sent to the plaintiff together with the credit card.[2] Thus, unlike this case, the plaintiff's use of the credit card in *Bazemore* did not evidence her actual receipt of the credit card agreement. Moreover, the issue of the existence of a valid agreement to arbitrate in that case was determined under the law of the State of Georgia.[3] *Id.* at 1330.

Since, *inter alia*, plaintiff does not oppose any other branch of defendant's motion and, in any event, the arbitration provision in the Card Agreement is clear that plaintiff waived his right to participate in a class action[4]; plaintiff's FDCPA claims clearly fall within the scope of the

---

[1] Indeed, plaintiff does not actually deny receiving the Card Agreement; he merely challenges the sufficiency of defendant's offer of proof of mailing.

[2] The defendant asserted only that a "Welcome Kit" including the credit card agreement would have been sent to the plaintiff "about ten days after she applied for the credit card." *Bazemore*, 827 F.3d at 1328, 1331.

[3] The Eleventh Circuit also found that the defendant's failure to establish that the copy of the agreement it submitted on its motion to compel contained the same terms and conditions as the agreement it purportedly sent to the plaintiff was "critical." *See Bazemore*, 827 F.3d at 1328, 1331. To the extent plaintiff's citation to *Bazemore* can be read to challenge defendant's submission of an "exemplar" of the Card Agreement, the Court finds that Gilson's assertion that the exemplar "contain[s] the terms and conditions governing the Account that would have been sent to [plaintiff]," (Gilson Decl., ¶ 7), together with the notation "02/16" at the bottom of the exemplar agreement, sufficiently demonstrates that it is a true copy of the actual Card Agreement that was sent to plaintiff, to which he consented. *See, e.g. Bakon*, 2017 WL 2414639, at * 3; *Marcario v. Midland Credit Mgmt., Inc.*, No. 2:17-cv-414, 2017 WL 4792238, at * 4 (E.D.N.Y. Oct. 23, 2017).

[4] In *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013), the Supreme Court upheld the enforceability of such contractual class action waivers under the FAA. *Id.* at 236-37, 133 S. Ct. 2304.

broad arbitration provision at issue, s*ee, e.g. Biggs*, 2018 WL 1225539, at * 6 n. 4; *Marcario*, 2017 WL 4792238, at * 5, *Thomas v. Midland Credit Mgmt., Inc.*, No. 2:17-cv-00523, 2017 WL 5714722, at * 11 (E.D.N.Y. Nov. 27, 2017), *Brecher*, 2019 WL 1171476, at * 7; and it is undisputed that defendant has standing to enforce the arbitration agreement, the branch of defendant's motion seeking to compel arbitration of plaintiff's claims against it on an individual basis pursuant to Section 4 of the FAA is granted; the parties shall proceed to arbitration in accordance with the terms of the Card Agreement; and the class action claims in plaintiff's complaint are dismissed in their entirety.

B.  Motion to Stay

Section 3 of the FAA requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement[.]'" *Concepcion*, 563 U.S. at 344, 131 S. Ct. 1740 (quoting 9 U.S.C. § 3); *see also Nicosia*, 834 F.3d at 229 ("The district court must stay proceedings once it is satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." (quotations and citation omitted)); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.") Accordingly, the branch of defendant's motion seeking to stay this action pursuant to Section 3 of the FAA is granted and this action is stayed pending the arbitration of plaintiff's claims.

III.  CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration of plaintiff's claims against it on an individual basis and to stay this action pending the arbitration pursuant to the FAA is granted; the parties shall proceed to arbitration in accordance with the terms of the Card Agreement; and the class action claims in plaintiff's complaint are dismissed in their entirety. Plaintiff shall submit his claims to arbitration within thirty (30) days of the date of this Order. This action is stayed and administratively closed with leave to reopen on ten (10) days' notice within thirty (30) days from the completion of the arbitration, <u>but in no event later than September 28, 2020</u>. The Clerk of this Court shall close this case.

SO ORDERED.

                                                          /s/ *Sandra J. Feuerstein*
                                                     SANDRA J. FEUERSTEIN
                                                     United States District Judge

Dated: September 27, 2019
       Central Islip, New York